AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>Antonio Marroquin (a/k/a "Jesus Guzman"), and<br>David Loyde<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Case No.<br><br>**8:20 MJ 1419 TGW** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ April 23, 2020 _____ in the county of _____ Manatee _____ in the _____ Middle _____ District of _____ Florida _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 and 841(b)(1)(A) | conspiracy to possess with intent to distribute five kilograms or more of cocaine |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Brian Steele, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 24, 2020

_____
*Judge's signature*

City and state: _____ Tampa, Florida _____

Thomas G. Wilson, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Brian Steele, being duly sworn, attest to the following:

### Introduction and Agent Background

1.      I am a special agent with the Drug Enforcement Administration (DEA), and I have been a DEA special agent since March 2017. I am currently assigned to the DEA Tampa District Office in the Middle District of Florida. My duties as a special agent include the investigation of drug-trafficking organizations and their various criminal activities.

2.      This affidavit is being submitted in support of a criminal complaint charging Antonio MARROQUIN and David LOYDE with conspiring to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C §§ 846 and 841(b)(1)(A).

3.      This affidavit does not contain all of the information I know about this investigation, but merely provides probable cause to issue a warrant for the defendants' arrests.  I have participated in the investigation described below, and I am familiar with the information contained in this affidavit through my personal knowledge and through information learned from others during the course of this investigation.

### Background of Investigation

4.      Antonio MARROQUIN (a/k/a Jesus "Jessie" Guzman), in 2011, was convicted, in the Middle District of Florida, for conspiracy to possess with intent to distribute five kilograms or more of cocaine, in case number 8:10-cr-197-T-30MAP.

He was sentenced to 60 months' imprisonment. *See* CM-ECF Doc. 50. He completed a term of supervised release in early 2020.

5.     Since early 2019, the DEA Tampa District Office and the Manatee County Sheriff's Office have been conducting an investigation into a drug-trafficking organization operating in the Middle District of Florida. During the course of this investigation, law-enforcement officers learned that MARROQUIN was a member of this DTO.

6.     As part of this investigation, on February 20, 2020, officers executed a federal search warrant at Marroquin's home in Myakka City, Florida. MARROQUIN was at the house when officers arrived, and during the search officers found approximately $111,000 in cash in an underground compartment. Also during the search, officers conducted a Mirandized interview with Marroquin. In that interview, MARROQUIN told officers that he was a drug trafficker who bought and re-sold kilogram-sized quantities of cocaine.

## Statement of Probable Cause

7.     In the days before April 23, 2020, and on April 23, 2020, law-enforcement officers consensually monitored phone calls between a confidential informant and MARROQUIN.[1] In those calls, the CI and MARROQUIN discussed

---

[1] The confidential informant has multiple felony arrests, to include arrests for resisting an officer without violence, sale of methamphetamine, and conspiracy to possess with the intent to distribute methamphetamine. The CI has not been paid for his/her work with law enforcement. He/she is also a subject of a DEA drug investigation, and he/she is working with law enforcement in the hopes of receiving consideration for his/her own criminal conduct.

a pending cocaine transaction. More specifically, MARROQUIN agreed with the CI to purchase from him/her three kilograms of cocaine in exchange for $87,000. MARROQUIN also agreed to accept two additional kilograms of cocaine on consignment.

8.     Here are excerpts of some of the communications between MARROQUIN ("AM") and the CI ("CI"):

<u>April 21, 2020, at approximately 5:43 p.m.</u>

CI:   Thursday, dude. Thursday for sure.

AM:   Thursday?

CI:   Yup.

AM:   That's good, that's good.

CI:   But it's only a dime so just let me know how many to set aside for you and I'll do it.

AM:   Like three or four, whatever you can.

CI:   Well, you, you tell me. You can pay for three and I lend you two for about a week or something. Like four, five days.

AM:   That's fine.

CI:   Can you do it?

AM:   Yeah.

CI:   It's just that they want me to give something to that one so he can head back right away.

AM:   Okay, no problem.

<u>April 23, 2020 at approximately 4:16 p.m.</u>

AM:  Give me a bucket of pickle as well, okay?

CI:  Okay, let me – shit, I'm already over here. Huh?

AM:  That way it looks better, whenever you meet me.

. . . .

AM:  I'm leaving Ruskin right now, but the thing is [unintelligible] . . . for my brother to hand over the pickles to my mom.

CI:  Yes, yes. I'll go back right now.

AM:  I'll be there by – what time is it now?

CI:  4:15.

AM:  I'll be there at around 5:30.

CI:  5:30, okay. Let me – I'll go back right now.

9.      Based on my training and experience in drug-trafficking investigations, and based on my specific knowledge of this investigation, I believe that, in these calls, when MARROQUIN said, "like three or four," he was referring to three or four kilograms of cocaine. During the call of April 23, 2020, recounted above, MARROQUIN requested a bucket of pickles, then said, "that way it looks better." I believe that, in this statement, MARROQUIN was telling the CI to bring a bucket of cucumbers along with the cocaine because he wanted to use the cucumbers to shield or disguise the cocaine. Later in the call, and in a subsequent call, MARROQUIN and the CI agreed to meet at 5:30 p.m. at a residence in Myakka City, Florida, to conduct the intended cocaine transaction.

4

10.     Based on these calls and other information, officers concluded that the CI and MARROQUIN would complete their planned cocaine transaction on April 23, 2020, so on that day officers conducted surveillance of MARROQUIN and others. Officers also gave the CI five individually wrapped packages of sham cocaine for the purpose of delivering it to MARROQUIN as the CI and MARROQUIN had planned. The sham cocaine was placed in a blue bag.

11.     Officers monitored the CI as he/she drove to meet MARROQUIN at their agreed-upon location in Myakka City, Florida. At approximately 6:44 p.m., agents observed MARROQUIN arrive at a residence in Myakka City, Florida. He was a passenger of a black Chevrolet Tahoe; the driver was later identified as LOYDE. Upon arriving near the residence, surveillance officers observed the CI enter the Tahoe while carrying a blue bag. About a minute later MARROQUIN and the man got out of the Tahoe. A white Hyundai Santa Fe then arrived to the residence. MARROQUIN got into the front passenger seat of the white Hyundai and both it and the black Chevrolet Tahoe left the residence.

12.     Surveillance officers stayed on both vehicles. The two vehicles traveled north on US 301 in Parrish, Florida. The Tahoe was in front of the Hyundai. Manatee County Sheriff's deputies observed that the Tahoe had dark window tint, and at approximately 7:12 p.m., the deputies conducted a traffic stop of the Tahoe. The Hyundai increased its speed and continued north past the traffic stop.

13.     The driver of the Tahoe, its sole occupant, was identified as LOYDE. During a subsequent search of the Tahoe, officers found a blue bag, and in it were

5

five rectangular objects consistent with size and shape of kilograms of cocaine. This was the sham cocaine the officers had earlier given the CI for the purpose of selling it to MARROQUIN. Officers seized the sham cocaine.

14.      LOYDE was arrested and advised of his *Miranda* warnings via a DEA-issued *Miranda* card. In their Mirandized interview with LOYDE, officers told LOYDE that they found cocaine in his vehicle, and when they asked LOYDE where he got the cocaine, he said, "That's my stuff right there." When asked if the cocaine belonged to MARROQUIN, LOYDE responded, "Those are not his." LOYDE then asked for an attorney.

15.      Investigators continued to follow the Hyundai. They subsequently stopped the Hyundai in Wimauma, Florida. MARROQUIN was the front seat passenger, and he was arrested at the scene. He denied his involvement in the offense and otherwise elected not to talk to officers.

## Conclusion

16.    To summarize, the facts described above establish probable cause that

Antonio MARROQUIN and David LOYDE conspired with each other to possess

with intent to distribute five kilograms or more of cocaine, in the Middle District of

Florida, violations of 21 U.S.C. §§ 846 and 841(b)(1)(A). I therefore request that the

Court issue warrants to arrest MARROQUIN and LOYDE for this offense.

Brian Steele, Special Agent
U.S. Drug Enforcement Administration

Sworn to and subscribed before me on this ____ day of April, 2020.

The Hon. Thomas G. Wilson
United States Magistrate Judge

7